Commonwealth *v.* Landis, Appellant.

Argued September 29, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and WHITMORE, JJ.

*O. J. Graham,* and with him *Charles A. Mertens,* for appellant.

*Otto Herbst,* District Attorney, and with him *Frank B. Quinn* and *George W. Tuterel,* for appellee.

OPINION BY WHITMORE, J., December 27, 1930:

The defendant was convicted in the court below upon an indictment which charged that he did "unlawfully and wickedly devising and intending to cheat and defraud one John M. Semple and one Joseph A. Semple of their goods, moneys, chattels and property, unlawfully did falsely and designedly pretend to them, the said John M. Semple and Joseph A. Semple, in regard to certain parcels of real estate situate in the City of Erie, that he the said Samuel W. Landis, was the owner of said property, that there was nothing against it, that it was clear" of encumbrances. The testimony shows that the defendant entered into three certain agreements in writing, all dated January 20, 1928, whereby the defendant agreed to convey the properties therein described in fee simple, clear of all encumbrances, the total consideration in the three contracts amounting to the sum of $15,000, all of which was subsequently paid by the said John M. Semple and Joseph A. Semple to the defendant.

The testimony clearly shows that the defendant for a number of years had been engaged in the real estate business in the city of Erie. On January 29, 1928, in company with a man who had done work for him as a salesman, he went to see John M. Semple and Joseph A. Semple for the purpose of interesting them in the purchase of real estate. The Semple brothers were persuaded by the defendant to become interested in the purchase of a house and lot at No. 1035 West Third Street, also a house and lot at No. 1037 West Third Street and a vacant lot adjoining the latter property, all in the city of Erie. The defendant represented to them that his title thereto was clear of all encumbrances, there being nothing against it. The following morning the Semple brothers went to the office of the defendant, where he had three agreements

already prepared for them to execute, the total price for the three properties being $15,000, consisting of $7,000 for each house and lot and $1,000 for the vacant lot. The Semple brothers suggested that they obtain the services of an attorney but the defendant assured them that this was not necessary and again repeated that his title was clear and there was nothing against it. Semple brothers relied on this representation made by the defendant, signed the three agreements to purchase the three several parcels of land, and at that time paid the defendant $7,000 in cash, and $3,000 on the following morning, the balance of the $15,000 within a short time thereafter. When the three agreements were signed by the parties and the $7,000 was paid to the defendant by Joseph A. Semple, the deal being thus treated as one transaction, it was understood that Joseph A. Semple was to get the house and lot at No. 1035 West Third Street and the other two properties were to be conveyed to John M. Semple. In pursuance of this understanding the defendant later made deeds for these properties as directed by the Semple brothers, each having his deed made to a sister to secure purchase money borrowed. Joseph A. Semple entered into possession of one of the houses and his brother, John M. Semple, into possession of the other. After occupying the premises for some time a Mr. Kugel called on Joseph A. Semple and inquired about interest that was due on a first mortgage upon the property. This was the first information that either of the Semple brothers had received respecting prior encumbrances. The defendant had the agreements prepared and ready for execution when Semple brothers went to the defendant's office. Joseph A. Semple inquired of the defendant: "Don't you think it is better to retain an attorney in this case?" and the defendant replied: "No, I have been in the real estate business

for fifteen years and know my business just as well as any lawyer knows his." After the Semple brothers had completed their payment of $15,000 on the three contracts Joseph A. Semple stated to the defendant: "The property is paid for; what about a deed for this property?" The defendant replied: "That is trivial. We hold deeds for four or five years at a time." After the call by Mr. Kugel, Joseph A. Semple called on the defendant and the latter stated: "Boys, there is nothing the matter with that property. I sold you that property; it is mine; there is nothing against it." The defendant further stated that the books at the court house were all wrong, saying: "The clerks at the court house are all incompetent; that property is O. K." We quote this testimony for the reason that it conclusively shows that the defendant not only misrepresented the facts with respect to encumbrances at the time the purchase agreements were made, but after the deal was completed, the consideration moneys paid, and deeds delivered. The defendant must have known and did know that at the time the agreements were made and the deeds executed that there were other mortgages against the property which he himself had executed, as well as a mortgage that was entered and unsatisfied at the time the defendant purchased the property. There could be no clearer case of obtaining money under false and fraudulent representation. Three indictments were found and the trial court directed that they be tried together for the reason that the matters therein contained all arose out of the same transaction.

There are eleven assignments of error presented, to all of which we have given careful consideration and are of the opinion that there is no merit in any of them.

It is clear that the defendant took advantage of the ignorance of Semple brothers, well knowing at the

time that there were existing encumbrances against the properties, and perpetrated a fraud on the purchasers.

In Commonwealth v. Saler, 84 Pa. Superior Ct. 281, this court held as follows:

"When a statute clearly specifies and denounces several distinct and separate acts, each of which amounts to a full and complete offense, yet if they are mere successive steps in one final act which completes the wrong, they amount to but one crime in fact, and a conviction and sentence for the final act constitutes a good defense to a separate indictment for each of the several previous acts. In such a case the specified acts may be distinct and separate offenses, or they may be so entirely parts of the same transaction that they may combine to make but one, and all may be charged in one count of the indictment."

The obtaining of the signatures to the written agreements and the receiving and obtaining of moneys thereon were successive steps in the same transaction, each of which involved the false pretense made on January 30, 1928 and when the transaction was consummated all of these acts merged and constituted but a single offense.

Under the law and evidence in this case the defendant was clearly guilty of obtaining money from Semple brothers with intent to cheat and defraud them and after a fair and impartial trial was convicted.

The assignments of error are overruled, the judgment below is affirmed and the record remitted to the court below; it is ordered that the defendant appear in that court at such time as he may be there called and that he be by that court committed until he has complied with the sentence, or any part of it which had not been performed when the appeal in this case was made a supersedeas.